IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUNO GUTIERREZ, as Successor-In-Interest to Gerardo J. Gutierrez,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>V. TUCKER,<br><br>　　　　Defendant. | No.  2:19-CV-0878-DAD-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff is proceeding pro se as successor-in-interest in this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Defendant's motion for summary judgment, ECF No. 48.  Plaintiff has filed an opposition, ECF No. 57.  Defendant filed a reply, ECF No. 59.

　　　　The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

1

1  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the
2  moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the


court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

### A.   Plaintiff's Allegations

Plaintiff is the father and successor in interest to Gerard J. Gutierrez, who was an inmate at the California Health Care Facility (CHCF) and has deceased. See ECF No. 35 (order substituting parties). This action proceeds on the original pro se complaint filed by Gerard J. Gutierrez (Mr. Gutierrez). See ECF No. 1.

V. Tucker, a nurse at CHCF, is named as the only defendant. See id. at 2. In the complaint, Mr. Gutierrez stated that he was a cancer patient and was first diagnosed while at CHCF. See id. at 7. Mr. Gutierrez further stated in the complaint that he was scheduled for a catheter change by to be performed by Defendant Tucker, whom Mr. Gutierrez claimed had a "vendetta" against him. See id. Upon learning that Tucker was assigned to perform the catheter change procedure, Mr. Gutierrez requested a different nurse. See id. According to Mr. Gutierrez, Tucker had a personal vendetta against him because Mr. Gutierrez had filed multiple "CDCR 602 HCs," referring to health care grievances, against security and medical personnel. Id. Mr. Gutierrez further alleged that Tucker mad made it known to him and other prisoners that she [Tucker] did not like prisoner and hated touching prisoners. See id. at 7-8.

///
///
///

According to Mr. Gutierrez, Tucker expressed to him Tucker's dissatisfaction of him [Mr. Gutierrez] complaining and asking for another nurse. See id. at 8. Mr. Gutierrez stated in the complaint that Tucker said: "You can't pick and choose who changes your catheter" and "Who do you think you are?" and "Do you think I want your stench in my hair and on my clothes?" Id. Mr. Gutierrez responded by telling Tucker "I'll be writing this up," to which Tucker responded: "I haven't done anything to you yet." Id. Mr. Gutierrez then requested a "Refusal of Examination and/or Treatment" form and was informed by Tucker that he could only sign the form and would not be allowed to include the reasons for refusing treatment by Tucker. See id.

Mr. Gutierrez stated in the complaint that, given the discomfort he was experiencing and the need for another catheter, he felt he had no choice but to allow Tucker to change his catheter. See id. at 9. According to Mr. Gutierrez, Tucker deflated the balloon in order to remove the existing catheter and then "violently yanked the catheter from PLAINTIFF'S body causing excruciating pain and extensive bleeding." Id. Mr. Gutierrez pleaded with Tucker to get a doctor and Tucker responded: "Don't tell me how to do my job!" Id. Mr. Gutierrez asked again for a doctor or nurse and told Tucker to stop what she was doing. See id. Tucker responded by saying "Now you have something to complain about" as she violently jammed a new catheter into Mr. Gutierrez stomach. Id. Mr. Gutierrez stated that this caused more pain and extensive damage to his suprapubic passage requiring surgery to repair. See id.

    **B.**    **Procedural History**

The Court determined the complaint was appropriate for service on June 11, 2019. See ECF No. 11. Defendant waived service of process and filed an answer on January 21, 2020. See ECF No. 19. On January 29, 2020, the Court issued a discovery and scheduling order. See ECF No. 20. On January 20, 2022, the Court modified the schedule and directed the parties to file dispositive motions within 90 days of the close of discovery on July 25, 2022. See ECF No. 45. Defendant timely filed the currently pending motion for summary judgment on October 24, 2022. See ECF No. 48.

///

## II. THE PARTIES' EVIDENCE

A. **Defendant's Motion**

Defendant's motion for summary judgment is supported by a Separate Statement of Undisputed Facts, ECF No. 48-3, as well as the declarations of David E. Kuchinsky, defense counsel, ECF No. 48-6, V. Tucker, ECF No. 48-4, and Agnes Sarthou, the Health Record Technician at CHCF, ECF No. 48-5. Because both share the same last name, Defendant refers to Gerard Gutierrez as "Gerard" and to Plaintiff Bruno Gutierrez as "Bruno."

According to Defendant, the following facts are not disputed:

   1. Gerard, who was diagnosed with multiple myeloma and a neurogenic bladder which required a suprapubic catheter, alleged in his complaint that Tucker was deliberately indifferent to Gerard's serious medical needs by improperly changing his suprapubic catheter, and that Tucker was deliberately indifferent in retaliation for Gerard's having filed grievances against her. (Complaint at 7-12; Tucker Decl. ¶¶ 5, 8-9.)

   2. Defendant V. Tucker was employed as a registered nurse at CHCF during the relevant time frame, and Tucker's relevant duties included providing routine medical care to inmates, consulting with physicians regarding patient care issues, and sending patients directly to physicians to address urgent care issues; Defendant Tucker has experience and is trained in changing suprapubic catheters, including providing wound care and dressing changes. (Complaint at 2, 6; Tucker Decl. ¶¶ 1-3.)

   3. Tucker never made any disrespectful or inappropriate comments to Gerard. (Tucker Decl. ¶¶ 7-10.)

   4. Tucker never harbored any ill-will towards Gerard, never retaliated against Gerard, and, until being served with this lawsuit, Tucker was never aware of any complaint or grievance Gerard had ever made against her. (Tucker Decl. ¶¶ 15-17.)

   5. Gerard died from unrelated causes on September 27, 2020, before he could be deposed or any other discovery could be conducted, and Bruno was substituted into the case as successor in interest on April 20, 2021. (Mot. for Subst. of Parties at 3-5, ECF No. 32; Order Granting Mot. for Subst. of Parties at 7, ECF No. 35; Bruno Dep. 9:25-10:4, 36:2-15; Kuchinsky Decl. ¶¶ 5-6.)

   6. Bruno has no personal knowledge of any of the allegations in Gerard's complaint, was not present for any of Gerard's medical appointments, was not present during any interactions between Tucker and Gerard, has never met or spoken to Tucker, and has no evidence to refute the information contained in Gerard's medical records. (Tucker Decl. ¶ 4; Bruno Dep. 14:6-16, 47:8-9, 47:19-21, 47:24-48:23, 51:17-22, 53:10-54:12, 55:10-57:17, 58:1-15, 62:9-17, 63:17-21, 64:11-66:1, 66:17-67:17, 67:24-68:23, 71:7-23, 73:2-13, 75:13-18, 77:15-20, 78:17-79:12.)

7. Bruno is not a doctor, is not qualified or licensed to practice medicine, is not familiar with suprapubic catheters, and has no information about the standard of care for changing catheters. (Bruno Dep. 11:8-12:7, 13:13-16, 47:24-48:19.)

8. On October 12, 2017, Tucker was scheduled to provide a regular dressing change and wound care to Gerard for his suprapubic catheter, but he refused despite Tucker reminding him about potential complications such as infection, sepsis, or death, telling Tucker, "I don't want it today" and refusing to sign a refusal form. (Tucker Decl. ¶ 7 & Ex. A.)

9. On October 13, 2017, at approximately 9:30 p.m., Tucker and another nurse met with Gerard to address complaints of no urine output from his catheter and abdominal pain. (Tucker Decl. ¶ 8 & Ex. B.)

10. During the October 13, 2017, appointment, Gerard demanded that Tucker change his catheter, despite Tucker explaining the risks involved with changing the catheter and instead suggesting a placement check. (Tucker Decl. ¶ 8 & Ex. B.)

11. At Gerard's insistence, Tucker took the catheter out slowly and, seeing no signs of distress from Gerard, attempted to insert the catheter slowly, but she felt resistance and stopped immediately, notified the on-duty doctor, and then sent Gerard to the Standby Emergency Medical Services (SEMS) for further evaluation. (Tucker Decl. ¶¶ 8-9 & Exs. B, C.)

12. From SEMS, Gerard was sent to an outside emergency department where his catheter was successfully replaced the following morning; however the following day Gerard still had issues with his suprapubic catheter and was sent back to the hospital on October 15, 2017 and a new catheter was replaced without further complications. (Sarthou Decl. Ex. A (San Joaquin General Hospital Records).)

13. Tucker next saw Gerard on October 19, 2017, and again on October 20, 2017, and noted that Gerard was stable and comfortable and his suprapubic catheter was intact and draining clear urine without Gerard exhibiting any signs of acute distress. (Tucker Decl. ¶¶ 11 & Ex. D.)

14. During a follow up examination on January 22, 2018, Gerard reported no urinary issues and there were no reported complications or problems with his suprapubic catheter. (Sarthou Decl. Ex. B (Progress Note)

15. The treatment Tucker provided to Gerard was within the standard of care and medically reasonable and appropriate. (Tucker Decl. ¶¶ 12-14.)

16. Tucker was not deliberately indifferent to Gerard's serious medical need, but instead attempted to change his catheter, experienced complications, and took immediate action to refer him to the on-duty doctor as she was required to do. (Tucker Decl. ¶¶ 12-14.)

ECF No. 48-3.

**B.** **<u>Plaintiff's Opposition</u>**

Plaintiff's opposition is supported by the declaration of Bruno Gutierrez and Exhibit A attached thereto, ECF No. 57-1, a statement in response to Defendant's Separate Statement of Undisputed Facts, ECF No. 57-3, a Separate Statement of Disputed Facts, ECF No. 57-4, and lodged Exhibits A through D, ECF No. 57-5.

In his declaration, Plaintiff (who is Mr. Gutierrez's father and successor in interest in this case) states that there is a video showing what he characterizes as mistreatment by Tucker. <u>See</u> ECF No. 57-1, pg. 1.  Plaintiff also states that Mr. Gutierrez's sister, Marion Carroll, was responsible for Mr. Gutierrez's medical issues and was often told of Tucker's conduct towards Mr. Gutierrez.  <u>See id.</u> at 3.  Plaintiff does not provide the Court with either the video or a declaration from Ms. Carroll.  Attached as Exhibit A to Plaintiff's declaration are various email exchanges between Plaintiff, the Court Reporter, and defense counsel regarding Plaintiff's deposition.  <u>See id.</u> at 7-10.

In his statement in response to Defendant's Separate Statement of Undisputed facts, Plaintiff largely repeats the factual allegations related by Mr. Gutierrez in his pro se complaint.  <u>See</u> ECF No. 57-3.  Plaintiff also specifically denies Tucker's statements in her declaration, specifically that she did not harbor ill-will towards Mr. Gutierrez and that she did not mistreat him or violate his rights.  <u>See id.</u> at 2.  Plaintiff does not attach any evidence to this filing.

Plaintiff also submitted a Separate Statement of Disputed Facts.  <u>See</u> ECF No. 57-4. According to Plaintiff, the following issues are in dispute:

> 1. Whether Mr. Gutierrez notified members of his family that he requested medical care be provided by a physician or other qualified person other than Tucker.
>
> 2. Whether Mr. Gutierrez was in pain on October 13, 2017, and requested to be treated by a physician.
>
> 3. Whether Tucker denied that request and told Mr. Gutierrez "You can't pick and choose who changes your catheter."
>
> 4. Whether Tucker only notified the physician <u>after</u> she had jabbed in a new catheter into a bleeding and injured site.

7

       5.    Whether Tucker was wearing long fingernails when she injured Mr. Gutierrez.

       6.    Whether Tucker caused the insertion site to be injured when she yanked out the catheter.

       7.    And whether Tucker then told Mr. Gutierrez "Now you have something to complain about."

Id. at 2-3.

Finally, Plaintiff filed Exhibits A through D. See ECF No. 57-5. These exhibits are summarized below:

| | |
|---|---|
| Exhibit A | The first two pages of Mr. Gutierrez's pro se verified complaint in this case, with documents attached thereto. See id. at 3-4. |
| Exhibit B | Declaration of Plaintiff Bruno Gutierrez (Mr. Gutierrez's father and success in interest). See id. at 5-7. |
| Exhibit C | Plaintiff describes this exhibit as the declaration of Marion Carroll. See id. at 2. The exhibit, however, is not included. |
| Exhibit D | Order findings service appropriate in Gutierrez v. Gutierrez, E. Dist. Cal. case no. 1:13-CV-0421-GSA-PC (Fresno Division). See id. at 7-9. |

Also attached to ECF No. 57-5 is a two-page form "CDCR 602" inmate appeal submitted by Mr. Gutierrez and alleging prison guards retaliated against him on February 22, 2020. See id. at 10-12.

### C. Defendant's Evidentiary Objection

In her brief in support of summary judgment, Defendant asserts that the Court cannot consider Mr. Gutierrez's pro se complaint in this case as an affidavit to defeat summary judgment. See ECF No. 48-2, pgs. 17-19. Defendant's argument is severalfold. First, Defendant contends the complaint cannot be treated as an affidavit because Mr. Gutierrez has died and thus cannot now testify as to its contents. See id. at 17. Second, Defendant argues that Mr. Gutierrez's statements set forth in his pro se complaint are inadmissible hearsay. See id. Third, Defendant maintains that, even if the pro se complaint is an admissible affidavit, it fails to establish a dispute of material fact. See id. at 17-18.

///

A verified complaint may be used as an opposing affidavit to defeat a motion for summary judgement. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). To qualify, the complaint must be based on personal knowledge and set forth facts that would be admissible in evidence. See id.; see also Fed. R. Civ. P. 56(c)(4). The complaint must also "show that the [complainant] is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Defendant argues that because Mr. Gutierrez is not competent to testify at trial, his complaint may not be considered. ECF No. 48-2, pg. 17. Defendant states Mr. Gutierrez is not competent because he is not available for trial. Id. This argument is not persuasive. Rule 56 does not demand that the affiant be available to testify at trial to be considered competent as to the matters stated in the affidavit. See Fed. R. Civ. P. 56(c)(4). Because Defendant has not shown that Mr. Gutierrez was not competent as to the matters stated in the complaint, the complaint cannot be set aside on grounds of competency.

Defendant also argues that because Mr. Gutierrez is deceased, the facts set forth in the complaint cannot be admitted at trial and so the complaint may not be considered. See ECF No. 48-2, pg. 17. Although this Court agrees that the central facts in the complaint are not admissible at trial, as discussed below, whether the complaint may be considered at the summary judgement stage turns on if the complaint "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). The question is not whether the complaint currently contains admissible evidence, but whether at the time it was created it set out admissible evidence. See id. While currently the central facts are barred by foundational and hearsay evidentiary objections, at the time the complaint was written those objections would not have barred admission — at the time the complaint was created, it "set out facts that would be admissible in evidence." See id. The complaint cannot be set aside for failing to set out facts that would be admissible in evidence.

However, a motion for summary judgement may be granted by a showing that "an adverse party cannot produce admissible evidence to support [a] fact." Fed. R. Civ. P. 56(c)(1)(b). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). While the complaint as a whole may not be set aside, certain information in the complaint may be if it

cannot be presented in a form that would be admissible at trial. See id.

Summary judgement in this case thus turns on whether Plaintiff can introduce the central facts discussed in Mr. Gutierrez's pro se complaint at trial. The complaint is an out-of-court statement that would be offered for the truth asserted, and so it would be barred from being introduced into evidence at trial by the hearsay rule. Fed. R. Evid. 801, 802. Similarly, anything told to Plaintiff by Mr. Gutierrez about his alleged ordeal would not be usable at trial to prove the ordeal happened. Id. The pro se complaint also does not fall under the exception to the hearsay rule set forth in Federal Rule of Evidence 804 for witnesses who are unavailable due to death. Under Rule 804, an unavailable witness includes one who cannot be present to testify because of death. See Fed. R. Evid. 804(a)(4). Hearsay evidence from such a witness may only be introduced, however, is such evidence "was given as a witness at a trial, hearing, or lawful deposition. . . ." Fed. R. Evid. 804(b)(1)(A). The pro se complaint at issue here does not fall within this exception and is inadmissible hearsay.

Defendant's objection to consideration of Mr. Gutierrez's pro se complaint is sustained.

### III.  DISCUSSION

In the pending motion for summary judgment, Defendant argues: (1) the undisputed evidence establishes that she was not deliberately indifferent to Mr. Gutierrez's serious medical needs; and (2) the undisputed evidence shows that Defendant did not retaliate against Mr. Gutierrez. See ECF No. 48-2.

**A.  Deliberate Indifference**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v.

Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Defendant argues that she provided medically acceptable treatment under the circumstances and did not consciously disregard an excessive risk to Mr. Gutierrez's health. See ECF No. 48-2, pgs. 12-13. Defendant's argument is based on the following version of events:

> . . .Tucker saw Gerard on October 13, 2017, to address Gerard's complaints that he was not getting any urine output from his catheter. Tucker assessed the complaints and Gerard's request to replace the catheter, informed Gerard of the risks of replacing the catheter, and then attempted to change Gerard's catheter. Tucker slowly removed the catheter with no signs of distress from Gerard. Then, while attempting to insert the replacement catheter, Tucker felt resistance and stopped, immediately notifying the on-duty doctor and sending Gerard to SEMS. Gerard was then treated at an outside hospital where his catheter was successfully replaced.
> Far from consciously disregarding an excessive risk to Gerard's health or ignoring his complaints, the undisputed evidence shows that Defendant Tucker received and acknowledged Gerard's complaints of low urine output from his catheter, discussed treatment options and associated risks, and attempted to change Gerard's catheter to address Gerard's complaints. Tucker actively provided medical treatment to Gerard and appropriately referred him to the on-duty doctor when complications arose.

ECF No. 48-2, pg. 12 (citations to Defendant's Separate Statement of Undisputed Facts omitted).

The Court finds that Defendant has met her burden on summary judgment of demonstrating the non-existence of a genuine dispute of material fact. Defendant's evidence naturally supports Defendant's version of events. The burden thus shifts to Plaintiff to provide evidence to put this version of events in dispute. Plaintiff's only evidence is Mr. Gutierrez's pro se complaint which, as discussed above, is inadmissible hearsay which does not fall within the exception for declarants who are unavailable due to death. Plaintiff cannot meet his burden and

12

the Court recommends summary judgment in favor of Defendant on Plaintiff's Eighth Amendment deliberate indifference claim.

### B. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Defendant argues that she did not subject Mr. Gutierrez to any adverse action and did not act with any retaliatory motive. See ECF No. 48-2, pgs. 15-16. First, Defendant contends that, because the allegations in Mr. Gutierrez's pro se complaint cannot be considered, and because Mr. Gutierrez died before he could be deposed, there is no evidence of an adverse action. See id. at 15. Second, Defendant asserts that she did not act with retaliatory intent for the simple reason that she was unaware Mr. Gutierrez had engaged in protected conduct. See id. at 15-16.

Plaintiff's retaliation claim is necessarily linked to Plaintiff's deliberate indifference claim. Specifically, Plaintiff claims that Defendant acted in the way Mr. Gutierrez alleged in the pro se complaint out of a desire to retaliate because Mr. Gutierrez' filed an inmate grievance. Thus, the adverse action element is the alleged medical deliberate indifference. As discussed above, the Court finds that Defendant's evidence relating to medical deliberate

13

indifference is undisputed and that her version of events must thus be accepted. Accepting Defendant's version of events, the retaliation claim necessarily fails on the first element because there was no adverse action against Mr. Gutierrez.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion for summary judgment, ECF No. 48, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 3, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE